This appellant was found guilty by a jury upon his being tried jointly with Roy Clayton Pooley on an indictment charging in pertinent part the following:
 "Roy Clayton Pooley . . . and Jonathan David Adams . . . did possess an explosive, tool, instrument or other article, to-wit: Screwdriver, gloves, wire pliers and key cutters, which are adapted, designed, or commonly used for committing or facilitating the commission of an offense involving forceful entry into premises or theft by a physical taking, with intent to use the same, in the commission of an offense involving forcible entry into premises or theft by a physical taking, in violation of 13-7-8 of the Code of Alabama, . . . ."
The jury found Roy Clayton Pooley not guilty.
Alabama Criminal Code § 13A-7-8 provides:
 "(a) A person commits the crime of possession of burglar's tools, if he:
 "(1) Possesses any explosive, tool, instrument or other article adapted, designed or commonly used for committing or facilitating the commission of an offense involving forceful entry into premises or theft by a physical taking; and
 "(2) Intends to use the thing possessed in the commission of an offense of the nature described in sub-division (a)(1) of this section.
 "(b) Possession of burglar's tools is a Class C felony."
According to § 13A-5-6 (a)(3), a Class C felony is punishable by imprisonment for "not more than 10 years or less than 1 year and 1 day." The court fixed appellant's punishment at imprisonment for eight years and sentenced him accordingly.
By the first issue presented in the brief of counsel for appellant, he contends that a prima facie case was not presented by the evidence for the State and that for that reason the court was in error in denying defendant's motion to exclude the evidence at the conclusion of the State's case.
We are in accord with appellant's argument to the effect that defendant's motion to exclude should have been granted if at the time there was no substantial evidence of defendant's guilt, which principle of law has been accepted uniformly by the appellate courts of Alabama since Gilbert v. State,30 Ala. App. 214, 3 So.2d 95 (1941), which followed the correct principle set forth in Ex parte Grimmett, 228 Ala. 1,152 So. 263 (1934), that the "scintilla rule" applicable in civil cases is not applicable in criminal cases and that, in the absence of substantial evidence of a defendant's guilt after the prosecution has rested its case, the denial of a timely presented motion to exclude the evidence would constitute prejudicial error necessitating a reversal of a judgment of conviction. In the instant case, it should be noted that defendant took the stand after his motion to exclude was denied and robustly denied that he had an intent to use any of the things alleged to have been possessed by him "in the commission of an offense" involving forcible "entry into premises or theft by a physical taking," which is a requisite of the crime of possession of burglar's tools as defined by § 13A-7-8.
Each of the briefs of the attorneys for the respective parties on appeal contains a commendably clear summary of the evidence that we are pleased to utilize, but in doing so we limit our resume to the evidence sought to be excluded by defendant's motion at the close of the evidence for the State, having in mind that the evidence presented thereafter would be irrelevant to the issue presented as to whether the issue *Page 1001 
now under consideration is well taken, which is correctly summarized in appellant's brief as follows:
 ". . . Officer Alton Miller testified that he, in response to a complaint went to the Fox Run Apartments on Honeysuckle Road and went to the back of the apartments to Emmanuel Christian School and saw two white males walking from Fox Run Apartments toward a vehicle parked in the parking lot . . . and that when they walked past it about fifteen to twenty feet he stopped them. That he frisked them for weapons and found on Jonathan Adams a small Derringer, a screw driver, a pair of wire pliers, a pen flashlight, and a pair of brown leather type gloves. That he put the Appellant and Mr. Pooley in separate cars and looked through the window of the vehicle parked in the Emmanuel Christian School parking lot and could see in the back floorboard of the vehicle a portable key-making device with a red handle and a black book. On the dash was a door unlocking tool or a strip of metal used to unlock doors."
In addition to what is shown by the appellant's statement of facts as above quoted from his attorney's brief, we now refer to the testimony of two witnesses who testified on call of the State before the State rested its case, both of whom were residents in separate apartments of the Fox Run Apartments at the time of the incident involved, which according to the undisputed evidence occurred after midnight of June 15-16, 1983. One of them, Keith Anthony, testified that he owned a 1981 Honda Accord automobile, which he had parked close to his apartment on the night of June 15, and that he locked his automobile before leaving it and going to his apartment. He testified:
 "A. I was awakened at 2:00 o'clock in the morning by a patrolman.
 "Q. Okay. And, did you go with the patrolman anywhere?
 "A. He directed me out into the parking lot and asked me to identify my vehicle.
"Q. Did you do that?
"A. Yes, I did. I pointed to my car.
He further testified:
 "A. I found that the passenger door, the lock had been punched out. The interior of the car, just below the window, most cars have some type of upholstery there and my car had that upholstery and it was pulled down, torn or cut or whatever and torn down.
 "Q. Right there where the lock area is but on the other side of the car?
"A. That is correct.
"Q. On the passenger's side?
"A. On the passenger's side. Yes, sir.
 "Q. Was your car like that the night before when you secured it?
"A. Absolutely not.
 "Q. What else, if anything, was different about your vehicle?
 "A. There was a pocket knife laying in the front seat of the passenger's side of the car that did not belong to myself or my wife.
 "Q. Other than that, was that the extent of the difference of your car?
"A. Yes, sir."
The other witness for the State testifying before the State rested its case was Parviz Golfeiz, who testified in important part as follows:
 "Q. Back in June of this particular year, 1983, June 16 around 1:15, I want to ask you if you were a neighbor to Keith Anthony at that time?
"A. Yes.
"Q. Out at the apartment complex?
"A. Yes.
 "Q. I want to ask you if you had an occasion to look outside and see anything please, sir?
"A. Yes, sir.
 "Q. Would you speak up now so your voice will carry past the Jury and tell them what you saw?
 "A. Well, I saw someone in Keith's car. And, he was messing with the steering wheel and the inside of the car. And, I called the police. And, by the time the police got there, they ran back to their *Page 1002 
car. We went back to his car and drove off to the back of the apartment.
 "Q. Okay. Let's start up at the front. At the time that you looked, first looked out and saw someone inside Keith's car, could you tell whether or not it was Keith?
"A. Yes.
"Q. Was it or wasn't it?
"A. It was not.
 "Q. Did you then call the police department immediately?
"A. Yes.
 "Q. Did you continue to look outside as to what the person was doing?
"A. Yes.
 "Q. Was it at that time that he was inside messing around inside the car?
"A. Yes.
"Q. Did you see the person get out of the car?
"A. Yes.
"Q. Where did the person go?
 "A. Back to the car that was parked back there, about a few yards from the car.
"Q. Did he get in that particular car?
"A. Yes."
Although the evidence for the State prior to its resting its case was woefully unclear and indefinite as to some particulars, we are able to determine with reasonable certainty from the evidence at the time of the motion of defendant to exclude the evidence that the person who was seen by Parviz Golfeiz in the automobile of Keith Anthony, as stated above, was either this appellant or his co-defendant Roy Clayton Pooley. In our opinion, the evidence thus considered constitutes substantial evidence that this appellant, either as the principal or as an aider or abettor, was guilty of the possession of burglar's tools with the intent to use the tools in the commission of an offense involving forceful entry into premises or theft by a physical taking in violation of Alabama Criminal Code, § 13A-5-6 (a)(3), as charged in the indictment.
The second issue presented by appellant is thus stated in his brief:
 "THAT TESTIMONY OF THE POLICE OFFICER DESCRIBING THE DEFENDANT FROM A DESCRIPTION GIVEN TO HIM BY A THIRD PARTY WAS RANK HEARSAY AND ITS ADMISSION OVER OBJECTION IS REVERSIBLE ERROR."
The issue is directed at the following part of what occurred during the direct examination by the State of Officer Alton Miller:
 "Q. Okay. Would you describe that particular male that was walking around from the Fox Run Apartments?
 "A. One of the subjects that was, that I had received a description was of a White male in his twenties.
 "MR. CARTER [Defendant's attorney]: Judge, I'm going to object to any description that he received.
 "THE COURT: That is a part of the complaint, I overrule you. I mean that is not a violation of the hearsay evidence rule.
 "THE WITNESS: And, the White male was supposedly wearing a black jacket."
We agree with the ruling of the trial court. It is in accord with what was held in Cory v. State, Ala.Cr.App.,372 So.2d 394, 399 (1979):
 "When an officer testifies to the details of a police dispatch overheard by him, merely to provide some explanation for his subsequent action in locating the accused, the details of the dispatch are admissible in evidence. The testimony of the details of the dispatch is not inadmissible as hearsay evidence when it is not offered to prove the truth of those details."
By the third and final issue presented in appellant's brief, he contends that the trial court committed reversible error in admitting "testimony that listed a hand gun as a burglar's tool along with a screw driver, pliers, and a pen flashlight." He expressly directs the contention to what occurred during a part of the direct examination by *Page 1003 
the State of Officer Alton Miller, as follows:
 "Q. And, when you frisked the Defendant Adams, would you tell the Jury what, if anything, that you found in regard to tools?
 "MR. WARD [Attorney for Defendant Pooley]: Objection, Your Honor.
"THE COURT: I overrule you.
"BY MR. BROWN:
"Q. You can answer the question.
"A. Officer Merrow frisked Adams first.
 "Q. Okay. Will you tell the court what was found at that time?
 "A. He found a small Derringer in Adams' pants pocket.
"Q. All right. What else, please?
"A. After he found that, I searched Adams' jacket.
"Q. All right. What if anything, did you find?
 "A. Found a screw driver, pair of wire pliers, pen flashlight and a pair of brown leather type gloves."
The direct examination of Officer Miller as to what was found on the search of Adams continued for about half a page of the transcript without the interposition of any objection.
From the foregoing, it is to be seen that the only objection made to the inquiry made by the State as to what was found on defendant Adams upon his being "frisked" was not made by the attorney for defendant Adams but by the attorney for defendant Pooley. As no ground of the objection was stated, it seems that probably the trial court ruled that the attorney for defendant Pooley was seeking to preclude the evidence on the general ground that it was incompetent, irrelevant and immaterial as to defendant Pooley, and that the trial court ruled correctly that such evidence at such time was admissible against defendant Pooley in view of the evidence at that time as to the apparent connection between the two. We are not convinced that the court would have been in error in overruling an objection of this appellant to the admission in evidence of the fact that a small Derringer was found in Adams' pants pocket, but we are fully convinced that appellant-defendant Adams did not preserve for review his contention presented by his third and final issue on appeal.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.